**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
JASMINE TORO, on behalf of herself and all    :    Civil Case No.: 1:22-cv-6130-MKV
others similarly situated,                       :

                                        :
                     Plaintiffs,         :
                                          :
       v.                                :
                                        :
GENERAL STORE, LLC,           :
                                        :
                   Defendant.      :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


### <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.    PRELIMINARY STATEMENT…………………………………………1

II.   PROCEDURAL HISTORY…………………………………………………2

III.  STATEMENT OF FACTS…………………………………………………… 2

IV.   LEGAL STANDARD…..…………………………………………………… 7

V.    ARGUMENT……………………………………………………………. 8

  A. DEFENDANT'S ATTEMPT TO DIRECTLY DISPARAGE
     BOTH PLAINTIFF AND PLAINTIFF'S COUNSEL
     SHOULD BE DISREGARDED, AS PLAINTIFF'S UNRELATED
     LITIGATION DOES NOT RENDER THE
     ALLEGATIONS AS IMPLAUSIBLE ……………………………………… 8

  B. BECAUSE PLAINTIFF HAS THE REQUISITE STANDING,
     THE COURT DOES NOT LACK SUBJECT MATTER
     JURISDICTION………………………………………………………..... 12

  C. DEFENDANT'S SUBMISSION OF EXTRINSIC EVIDENCE
     SIDESTEPS PROPER PROCEDURE AND
     IS THEREFORE IMPROPER ………………………………...………… 18

  D. BECAUSE DEFENDANT HAS FAILED TO DEMONSTRATE
     SUFFICIENT GROUNDS FOR DISMISSAL OF THE FEDERAL
     ADA CLAIM ASSERTED BY THE AMENDED COMPLAINT,
     THE REQUEST FOR DECLARATORY RELIEF,
     THE STATE LAW CLAIMS, AND NEW YORK CITY LAW
     CLAIMS MUST BE SUSTAINED……………………………….........…20

VI.   CONCLUSION……………………………………...……...…………………20

## TABLE OF AUTHORITIES

**Pages**

**Cases**

*ANGELES V. GRACE PRODS.*,
2021 U.S. DIST. LEXIS 182317 (S.D.N.Y. SEPT. 23, 2021) …………………..………… 18

*CALCANO V. SWAROVSKI N. AM. LTD.*,
36 F.4TH 68 (2D CIR. JUNE 2, 2022) …………………………………………………… 12, 13

*CHALAS V. BARLEAN'S ORGANIC OILS, LLC,*
2022 U.S. DIST. LEXIS 211816 (S.D.N.Y. NOV. 22, 2022)  ………………………....…… 14

*DOMINGUEZ V. GRAND LUX CAFE LLC,*
2020 U.S. DIST. LEXIS 109679 (S.D.N.Y. JUNE 22, 2020)……………………………10, 16

*GERTSKIS V. EEOC,*
594 F. APP'X 719 (2D CIR. 2014) …………………………………...……………..……….7, 12

*GREGORY V. DALY,*
243 F.3D 687 (2D CIR. 2001) ………………………………………...…………..……… 7

*HECHT V. MAGNANNI INC.,*
2022 U.S. DIST. LEXIS 60836 (S.D.N.Y. MAR. 31, 2022)…………………………………18

*JOHN V. WHOLE FOODS MKT. GROUP, INC.,*
858 F3D 732 (2D CIR. 2017) ……………………………………………………...……… 12

*LOWELL V. LYFT, INC.,*
2022 U.S. DIST. LEXIS 230863 (S.D.N.Y. DEC. 22, 2022)…………………………………17

*LUJAN V. DEFS. OF WILDLIFE,*
504 U.S. 555 (1992)  …………………………………………….………………………… 11

*MAKAROVA V. UNITED STATES,*
201 F.3D 110 (2D CIR. 2000) …………………….…………………………………..…… 7

*MONEGRO V. ST. INSIDER DOT COM INC.,*
2022 U.S. DIST. LEXIS 25576 (S.D.N.Y. FEB. 11, 2022)………………………...….. 12, 18, 19

*ROBINSON V. GOV'T OF MALAY.,*
269 F.3D 133 (2D CIR. 2001) ……………………………………………..……... 19

*SANCHEZ V. NUTCO, INC.,*
2022 U.S. DIST. LEXIS 51247 (S.D.N.Y. MAR. 22, 2022) ………………………………… 17

*TAVAREZ V. MOO ORGANIC CHOCOLATES, LLC,*
2022 U.S. DIST. LEXIS 210720 (S.D.N.Y. NOV. 21, 2022)………………..……………..…… 17

*THOMPSON V. EQUIFAX INFO. SERVS. LLC,*
2022 U.S. DIST. LEXIS 32935 (E.D.N.Y. FEB. 24, 2022)…………………………………..… 11

*TRIESTMAN V. FED. BUREAU OF PRISONS,*
470 F.3D 471 (2D CIR. 2006) …………………………………….……………………..……..7

*WINEGARD V. NEWSDAY LLC,*
556 F. SUPP. 3D 173 (E.D.N.Y. 2021)……………………………………………….…………15

**Rules**

FED. R. CIV. P.  12(B)(1) ....................................................................... 2, 7, 12, 14, 18

Plaintiff JASMINE TORO ("Plaintiff") respectfully submits this memorandum of law in opposition to GENERAL STORE, LLC's ("Defendant") motion to dismiss and supporting documents ("Motion to Dismiss").[1]

## I.   **PRELIMINARY STATEMENT**

The Amended Complaint properly pleads all of the necessary elements for the relief sought thereby, including a plausible injury-in-fact. In an attempt to dismiss the Amended Complaint, Defendant seeks to disparage Plaintiff and/or Plaintiff's counsel by referencing the existence of unrelated litigation concerning similar ADA violations encountered by Plaintiff. However, this Court should disregard such disparagement (deemed by Defendant to be "Carbon Copy Cases"). Instead, this Court should consider such other litigation as evidence of the systemic disregard for visually impaired consumers that, unfortunately, is widespread throughout the internet and e-commerce platforms. Plaintiff, as a visually impaired consumer, was afforded certain rights under the ADA. Those rights were violated by Defendant. Plaintiff has no less standing to protect such rights as would any other visually capable consumer, and Plaintiff's attempts at enforcing those rights in the past should not harm Plaintiff's standing to do so here. Indeed, it is for this very reason that Congress first enacted the ADA: to afford *continuing* protection of people with disabilities.

Further, Defendant attempts to circumvent the Federal Rules of Civil Procedure and well-established caselaw by introducing evidence extrinsic to the four corners of the Complaint in order to both (i) disparage Plaintiff and Plaintiff's counsel, and (ii) advance an argument that Plaintiff

---

[1] As used in this motion, the term "Amended Complaint" refers to the First Amended Complaint filed in this action on December 19, 2022 (ECF No. 11), "Defendant's Motion to Dismiss" refers to Defendant's Motion to Dismiss dated January 3, 2023 (ECF No. 12), and "Def. Supp. Mem." refers to Defendant's Supplemental Memorandum of Law in Support of its Motion to Dismiss, attached as Exhibit #3 to Defendant's Motion to Dismiss.

lacks standing.  While courts may consider extrinsic evidence on a Rule 12(b)(1) motion to dismiss that raises a *factual* challenge, Defendant does not raise a factual challenge, but rather a *facial* challenge.  Accordingly, Defendant's extrinsic evidence was improper.

Finally, because Defendant's attempts at dismissing Plaintiff's ADA claims fail, Defendant's arguments for dismissal of Plaintiff's claims arising from state law likewise fail. Accordingly, Defendant's Motion to Dismiss should be denied in its entirety.

## II.      PROCEDURAL HISTORY

On July 19, 2022, Plaintiff filed the initial complaint in this action (ECF No. 1, the "Initial Complaint").  Plaintiff then filed the Amended Complaint on December 19, 2022 (ECF No. 11). Defendant's Motion to Dismiss, which is currently at issue, then followed.

## III.      STATEMENT OF FACTS

Defendant is a retail company that owns and operates the website Shop-generalstore.com (the "Website"), through which it offers goods and services to consumers, including, without limitation, the ability to view and purchase various types of handmade and artisanal home products, apparel, and jewelry, amongst other items.  Amended Complaint at ¶¶ 4, 16.

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to properly utilize her computer to access the internet.  Amended Complaint at ¶2.  Plaintiff visited Defendant's Website several times, including, *inter alia*, on July 12, 2022 and December 16, 2022.  Amended Complaint at ¶¶ 6, 36; *see also* Declaration of Jasmine Toro in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Toro Decl.," a true and correct copy of which is submitted as **Exhibit A** to this Memorandum) at ¶ 7.

Plaintiff. visited Defendant's Website in order to, *inter alia*, browse the various types of women's apparel, jewelry and accessories available on the Website and understand the different descriptions and prices for the products offered on the Website in order to complete a purchase by, for instance, listening to audio descriptions of the images of the products sold on the Website. Amended Complaint at ¶ 6.  As a visually impaired consumer, Plaintiff has come to heavily rely on online shopping, which (i) allows for convenient home delivery of the products Plaintiff purchases; and (ii) allows Plaintiff to shop on her own schedule, 24/7. Toro Decl. ¶ 4. Because of this, Plaintiff has gotten extremely used to using screen-reading accessibility software for purposes of browsing products online for potential purchases. Toro Decl. ¶ 5. However, adequate descriptions of images encoded on websites are necessary for Plaintiff to be able to use her screen-reading accessibility software in order to properly shop online. Toro Decl. ¶ 6.

Due to the existence of access barriers on the Website, Plaintiff was unable to properly utilize the Website despite her numerous attempts. *See, e.g.,* Amended Complaint at ¶ 36. In particular, the numerous access barriers that Plaintiff has encountered on the Website included, without limitation (collectively, the "Access Barriers"):

a.   Images from the home page had ambiguous, non-descriptive alternative text, which impeded Plaintiff from learning more detailed information about images;

b.   Different images of the same product on product pages had similar and poorly descriptive alternative text, which impeded Plaintiff from learning more detailed information about the product;

c.   Landmarks were not properly inserted into the Website, Plaintiff tried to bypass navigation menus and could not access "main" section of the page using landmarks;

d.     Headings hierarchy on About Us page was not properly defined, and there was missing heading level 2 between levels <h1> and <h3>, resulting in quick navigation through headings on the Website not helping Plaintiff effectively find the content of interest;

e.     The Product category page utilizes "infinite scroll", a design practice that loads content continuously as the user scrolls down the page, and, as a result, most products on the main region were not focusable from the keyboard;

f.     When Plaintiff intended to skip the Navigation menu and activated bypass block element, the "Skip to content" mechanism provided by the accessibility widget did not work properly, meaning it did not move keyboard focus to the main content; as a result, Plaintiff was forced to tab through all the sub-menu links of the Navigation region;

g.     The Website did not preserve correct keyboard tabbing (reading) order, leading to Plaintiff perceiving different version of the home page with an incorrect sequence and order of interactive elements layout;

h.     Social media icons were used as links without appropriate alternative text, and Plaintiff was not informed about the purpose of the graphic icon;

i.     Links led to another Website without indicating that they were external, resulting in Plaintiff finding herself disoriented on another website;

j.     The telephone number on the Contact Us page was presented in plain text and was inaccessible to the screen reader software, which means that Plaintiff would not have been able to contact the customer support in case she had had some questions to

clarify details about product or purchase procedure;

k.   The search button had ambiguous name; because of the mismatch of the visible button text and programmatically determined label, it was difficult for Plaintiff to identify the purpose of interactive element;

l.   Plaintiff was not aware of the search suggestions after search term was entered into the Search bar. The status update, such as a brief text message about search suggestions, was not provided even though the content of the page was updated and search suggestions were displayed. Without appropriate status message legally blind users do not know that search suggestion appeared on the screen;

m.   Plaintiff was disoriented when the automatic Email Subscription pop-up window appeared on the web page. Plaintiff, as a legally blind user, has a significant difficulty knowing when automatic visual context change has occurred, such as a new window popping up;

n.   Plaintiff tried to follow Social media links from the website and received no prior warning that the links opened a new window. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and found herself disoriented;

o.   Plaintiff tried to complete Checkout procedure and was unable to determine the purpose of the interactive elements ("remove" button); and

p.   The accessibility overlay implemented on the Website was not scannable by Plaintiff's screen-reading device and was, therefore, unusable.

Amended Complaint at ¶ 33.  Consequently, Plaintiff was prevented from purchasing any items

from the Website, as the user experience to left her discombobulated and confused. Amended Complaint at ¶ 33. In particular, due to the Website's inaccessibility, Plaintiff was unable to make an online purchase of the "Ambrosia" and "Esyllt" earrings. Amended Complaint at ¶ 36. The style of the earrings that Plaintiff could not purchase suits Plaintiff's taste, and Plaintiff has been unable to find that exact style earrings that made of real gold at other affordable retailers. Plaintiff's Declaration at ¶ 6.

Due to the Access Barriers, Plaintiff and other blind customers are unnecessarily restricted; such restrictions could be avoided if the Website was accessible and allowed for blind persons to utilize the Website as sighted individuals can and do. Amended Complaint at ¶ 34. Thus, the Access Barriers deny Plaintiff full and equal access to the Website, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website.  Amended Complaint at ¶ 35.

The inaccessibility of the Website has deterred Plaintiff from making an online purchase of the "Ambrosia" or "Esyllt" earrings. Amended Complaint at ¶16.  However, while Plaintiff was unable to complete purchases in the past, Plaintiff intends on visiting the Website immediately if it were made accessible to her in order to purchase either the "Ambrosia" or "Esyllt" earrings. Amended Complaint at ¶37. Plaintiff's intention was and is to purchase these items for her own use and wear. Amended Complaint at ¶37. However, Plaintiff is currently restricted from to experiencing the joy, emotional satisfaction, and fulfillment of wearing the jewelry that the Defendant offers for sale on its Website. Amended Complaint at ¶37. As such, Plaintiff continues to suffer an injury as a result of Defendant's inaccessible website, as she would like to order the earrings offered by Defendant to be shipped directly to her home, once the Website is made

accessible. Amended Complaint at ¶37; Toro Decl. at ¶ 13. Plaintiff is unable to specify further details concerning the timing of when she can use the Website in the future, as the Website is currently not accessible to her as a visually impaired consumer and she does not know when the Website will be made accessible. Toro Decl. at ¶ 14. Plaintiff deems any further attempts to access the Website before it becomes accessible to be futile. Toro Decl. at ¶ 15.

Based on this, the Amended Complaint adequately alleges (i) Defendant's violations of 42 U.S.C. § 12181 *et seq.* –Title III of the ADA (First Cause of Action); (ii) Defendant's violations the New York State Human Rights Law, N.Y. Exec. Law Article 15 (the "NYSHRL") (Second Cause of Action); (iii) Defendant's violations of Article 4 of the New York State Civil Rights Law (the "NYSCRL") (Third Cause of Action); and (iv) Defendant's Violations of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL") (Fourth Cause of Action).  Additionally, the Complaint seeks Declaratory Relief related to such violations (Fifth Cause of Action).

## IV.    <u>LEGAL STANDARD</u>

First and foremost, the Second Circuit cautions district courts from hastily dismissing complaints of civil rights violations. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

In reviewing a motion to dismiss under Rule 12(b)(1), a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014) (*citing Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Granting dismissal under Rule 12(b)(1) is appropriate only "when the district court lacks the statutory or constitutional power to adjudicate it." *Id.* (*citing Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

V. **ARGUMENT**

A. **DEFENDANT'S ATTEMPT TO DIRECTLY DISPARAGE BOTH PLAINTIFF AND PLAINTIFF'S COUNSEL SHOULD BE DISREGARDED, AS PLAINTIFF'S UNRELATED LITIGATION DOES NOT RENDER THE ALLEGATIONS AS IMPLAUSIBLE**

As an initial matter, Defendant's attempt to disparage Plaintiff and Plaintiff's counsel must be addressed. Defendant states that "[f]rom July-December 2022, [Plaintiff], through the same law firm representing her in this action, has filed at least 31 virtually identical complaints (the "Carbon-Copy Cases," of which this Court is presently assigned four) in this District, alleging that various consumer-facing retail websites have violated [the ADA] by failing to design their websites in such a way as to meet the highest standards for web accessibility to the blind and visually-impaired." Def. Mem. at p. 1. In addressing Plaintiff's amendment of her Initial Complaint, Defendant states that "the Amended Complaint is strikingly similar to the Original Complaint. There appear to be edits germane to the present motion practice only at Paragraphs 8, 32, 36 and 37 – where Plaintiff makes a halfhearted effort to flesh out her alleged injury-in-fact to support her standing to sue." Def. Mem. at p. 2. Based largely on the fact that Plaintiff has filed other cases alleging violations of the ADA that used substantively similar language as the language used in the Amended Complaint, Defendant summarily asserts that "Plaintiff's expanded allegations of injury are preposterous and should not be reflexively credited as true in the context of this motion to dismiss." Def. Mem. at p. 5-6. As the argument concerning what Defendant deems to be Plaintiff's "Carbon Copy Cases" rests at the core of Defendant's arguments for dismissal, the picture that Defendant paints must be properly addressed.

It is true that Plaintiff has filed a large number of cases concerning various ADA violations that she has encountered when using the internet. This fact, however, does not weaken the

legitimacy of the case at hand. Rather, the number of cases that Plaintiff has seen fit to raise in federal court demonstrates the *systemic and rampant discrimination faced by Plaintiff and other visually impaired consumers on a daily basis when using the internet*, which goes directly to the very issue the ADA was meant to address.

It is irrefutable that the internet has displaced in store shopping to a very large extent for both visually impaired and visually-abled consumers. Indeed, visually impaired consumers, like consumers that are visually-abled, depend on the internet more and more every day. Plaintiff, in particular, has come to heavily rely on online shopping, which (i) allows for convenient home delivery of the products Plaintiff purchases; and (ii) allows Plaintiff to shop on her own schedule, 24/7. *See* Toro Decl. ¶ 4. However, because Plaintiff and other visually impaired consumers are forced to rely on certain technology (such as screen readers, in Plaintiff's case) to fully utilize and benefit from the internet, Plaintiff and other visually impaired consumers are at the mercy of the owners and operators of websites who must properly code their websites to be accessible to the visually impaired. Unfortunately, some companies either ignore these accessibility concerns entirely, or else cut corners with regard to website accessibility in order to save costs.

The Amended Complaint alleges that Plaintiff had repeatedly attempted to utilize Defendant's Website but could not so because of the Access Barriers she encountered; Plaintiff thereby suffered discriminatory harm. Plaintiff concedes that this is not the first time this has happened. In fact, and unfortunately, this is *very likely* not the last time Plaintiff will encounter access barriers that will prevent her from properly utilizing a website to the same extent as visually-abled consumers. Plaintiff further concedes that this is not the first time that Plaintiff has turned to federal court to address the issue, and that Plaintiff has used language in the complaints filed in

those cases that is substantively similar to the language used in the Amended Complaint in this action. However, the fact that Plaintiff has chosen in the past to protect the rights afforded to her under the ADA in the manner in which Congress *intended* for disabled consumers to protect themselves (*i.e.*, litigation) does not and should not weaken or delegitimize the nature of the Access Barriers that Plaintiff has encountered on Defendant's Website, the discriminatory effect that such Access Barriers have caused to Plaintiff and other visually impaired consumers, or the violation of federal and state law that such Access Barriers create. Nor are these issues weaken or delegitimized by the facts that Plaintiff has chosen a specific law firm to represent her in these cases or that such counsel has made the decision, in their discretion, to use similar language in the complaints filed on behalf of Plaintiff.

Defendant cites to *Dominguez v. Grand Lux Cafe LLC*, in which this Court quoted the following language: "[t]hose who live by the photocopier shall die by the photocopier where they fail specifically to assert any concrete injury." Def. Mem. at p. 7 (*citing* 2020 U.S. Dist. LEXIS 109679, at *11 (S.D.N.Y. June 22, 2020) (Vyskocil, J.). But Defendant's argument ignores the language that immediately precedes the language it cites. "*There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical.*" *Dominguez,* 2020 U.S. Dist. LEXIS 109679, at *11 (citations omitted) (emphasis added). This language, while not as catchy as the quote cited by Defendant, is no less true: even if, *arguendo*, the allegations in each of the lawsuits raised by Plaintiff were outright identical, as long as identical violations exist and result in identical harm, the allegations remain entirely legitimate. It is clear that a plaintiff that lives by the photocopier shall die by the photocopier only when such plaintiff fails to "assert any concrete injury." *Id* at *9-10 (finding such failure where the plaintiff (i)

"does not even explain what he means when he asserts that he intends to go to 'Defendant's restaurant. . . .[t]hus offer[ing] no plausible basis for the inference that he 'intends to return to the subject location,' wherever that may be," and (ii) "does not explain how the failure of Grand Lux Café to sell braille, or other blind-accessible, gift cards creates a barrier to *his* return to their physical restaurants. . . . [as] by nature, a 'gift card' is not commonly understood to be for one's own use, but rather a gift to give to another person to use at the restaurant") (citations omitted) (emphasis in original).

This is not the case here. The Amended Complaint sets forth the exact Access Barriers encountered by Plaintiff on Defendant's Website, as well as how those Access Barriers have caused discriminatory harm to Plaintiff. Plaintiff alleges that she continues to suffer an injury, as she would like to order earrings to be shipped directly to her home from Defendant's Website immediately once the website is made accessible. These allegations are sufficient to allege a concrete injury, as will be demonstrated below.

Though this case shares factual similarities to other cases brought by Plaintiff in that they are based on a defendant's failure to properly ensure its website is accessible to visually impaired consumers, and the Amended Complaint in this case uses the same language that Plaintiff has used in other cases, the allegations in this case are no less legitimate. Plaintiff was harmed by websites that are not properly accessible to the visually impaired, in both this case and others. Plaintiff has sought to remedy the harm experienced by Plaintiff and prevent further harm, in both this case and others. These facts do not defeat the legitimacy of the allegations in the Amended Complaint. Accordingly, Defendant's arguments that depend on inferences made from the fact that Plaintiff has filed other ADA cases should be ignored.

## B.  BECAUSE PLAINTIFF HAS THE REQUISITE STANDING, THE COURT DOES NOT LACK SUBJECT MATTER JURISDICTION

"To satisfy the 'irreducible constitutional minimum' of standing. . . . [a]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice." *John v. Whole Foods Mkt. Group, Inc*., 858 F3d 732, 736 (2d Cir 2017) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Thompson v. Equifax Info. Servs. LLC*, 2022 U.S. Dist. LEXIS 32935, at \*13-14 (E.D.N.Y. Feb. 24, 2022) ("[H]ere, we are at the pleading stage where general factual allegations of injury are sufficient to plead standing"). Further, when considering a Rule 12(b)(1) motion to dismiss, a court must "accept all factual allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Gertskis v. EEOC*, 594 F. App'x 719, 721 (2d Cir. 2014); *see also Monegro v. St. Insider DOT Com Inc*., 2022 U.S. Dist. LEXIS 25576, at \*4 (S.D.N.Y. Feb. 11, 2022).

The Amended Complaint alleges that Plaintiff encountered numerous, specific Access Barriers that prevented her from properly navigating the Website, which caused Plaintiff to suffer an injury (*see, e.g.,* Amended Complaint at ¶¶ 33-36).   Thus, the Amended Complaint has sufficiently established Plaintiff's standing, especially at the motion to dismiss stage.

Defendant cites to the Second Circuit decision in *Calcano v. Swarovski N. Am. Ltd*., 36 F.4th 68 (2d Cir. June 2, 2022). Defendant summarily asserts that "[t]he Calcano plaintiffs, like [Plaintiff], recited the magic formula in their pleadings, asserting that they wished to make an online purchase from the defendants (gift cards in the *Calcano* case, jewelry in the instant case)." Def. Mem. at p. 6. However, Defendant fails to account for the clear distinctions between this case and *Calcano*.

While Defendant is correct that the court in *Calcano* found that the subject allegations did

not plausibly establish that the plaintiffs intended to return to the subject locations, Defendant does

not fully set forth the issues that defeated the subject allegations.  For example, the court noted that

one of the plaintiffs "alleges that he 'resides on W. 23rd Street, New York, NY, on the same street

and less than a block from the Kohl's retail store at 271 W. 23rd St, New York, NY.' But there is

no Kohl's store anywhere in Manhattan, let alone at that address. [This plaintiff] thus lacks

standing." *Calcano*, 36 F.4th at 76. The *Calcano* opinion is replete with such issues, which render

the allegations at issue in that case as implausible.

In fact, while Defendant chooses to harp on another particularly snappy turn of phrase in

the *Calcano* opinion—that the court noted the plaintiffs' "Mad-Libs-style complaints"—Defendant

fails to account for what made the *Calcano* court reach such a finding:

> This backdrop of [the plaintiffs]' Mad-Libs-style complaints further confirms the
> implausibility of their claims of injury. As noted above, Murphy asserts that he would return
> to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic for its food.
> Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey
> Mike's impossible. Calcano plans to travel from somewhere in the Bronx to Columbus
> Circle for a shaving supply gift card. And all of these plans depend on the availability of
> braille gift cards even though [the] [p]laintiffs never explain why they want those cards in
> the first place. Although we might excuse a stray technical error or even credit an odd
> allegation standing alone as an idiosyncratic preference—to do so here in light of the
> cumulative implausibility of [the] [p]laintiffs' allegations would be burying our heads in the
> sand. Judicial experience and common sense suggest that the errors, oddities, and omissions
> in the complaints are a result of their mass production, and they render each [p]laintiff's
> cookie-cutter assertion of standing implausible.

*Calcano*, 36 F.4th at 77.

Here, there are no "errors, oddities, and omissions" in the Amended Complaint to suggest

implausibility, as demonstrated by Defendant's line of argument. Defendant takes issue with the

third prong of the "likelihood of future harm" analysis (*i.e.,* the intent to return), arguing that "[t]he

Amended Complaint does not include any factual context that would make it plausible to suppose

that [Plaintiff] ever intends to return to [Defendant's Website] or has any bona fide intention of otherwise becoming a General Store customer." Def. Mem. at p. 11. In support of these assertions, Defendant raises the following three points: (i) that Plaintiff "does not allege that she has ever been a customer of the California-based General Store in the past," (ii) that Plaintiff "stops short of alleging that the 'Ambrosia' and 'Esyllt' earrings she supposedly intends to buy are exclusively available via Defendant's website, and (iii) that "the legally blind [Plaintiff] does not explain why she would want to buy 'thinly-styled,' 'real gold' earrings online by 'listening to audio descriptions of the images of the products sold on the Website,' as opposed to shopping in person where she would be able to touch and try on the earrings." Def. Mem. at pp. 6-7.

These points, however, fall significantly short of the "errors, oddities, and omissions" that turned the Second Circuit's opinion in *Calcano*. Indeed, while past patronage can be (and commonly is) considered when inferring plausible injury, a plaintiff is not required to have been the defendant's customer in the past in order to have been injured, nor does the fact Plaintiff did not allege to be a customer of Defendant's in the past conclusively establish Plaintiff did not (and does not) intend to purchase products from Defendant. *See, e.g., Chalas v. Barlean's Organic Oils, LLC*, 2022 U.S. Dist. LEXIS 211816, at *8-9 (S.D.N.Y. Nov. 22, 2022) (distinguishing the allegations from those at issue in *Calcano*, finding that the plaintiff has pled sufficient facts to establish standing, and denying the defendant's motion to dismiss pursuant to 12(b)(1), despite the plaintiff only alleging to have visited the defendant's website on the three dates on which she encountered access barriers that prevented her from completing a transaction).

Likewise, Defendant has failed to cite to authority establishing that Plaintiff was *required* to allege that the products she sought to purchase were "exclusively available via Defendant's

[W]ebsite," only arguing that Plaintiff "stops short" of alleging the same.  This is because there is no such authority, a fact that has been recognized by prior holdings. For instance, the court in *Winegard v. Newsday LLC* found the following when considering a substantively identical argument:

> This argument strikes the Court as analogous to arguing, in the case of an alleged physical barrier, that a disabled person suffers no injury sufficient to confer standing so long as an accessible store down the block offers the same product. Plaintiff cites no authority for the proposition that a competitor's accessibility deprives an otherwise aggrieved plaintiff of standing, and this Court is aware of none. Defendant's motion to dismiss for lack of jurisdiction is therefore denied[.]

556 F. Supp. 3d 173, 175 (E.D.N.Y. 2021) (citations omitted). Rather, as Plaintiff attests, while these earrings may be available for purchase directly from the manufacturer, the manufacturer ships items from Canada and not the United States, so Plaintiff is concerned that the shipping will be less reliable and/or take longer to be delivered. Toro Decl. ¶ 11.

With regard to Defendant's argument of how Plaintiff does not "explain" why she, as a legally blind consumer, would want to buy earrings online instead of "shopping in person where she would be able to touch and try on the earrings" (Def. Mem. at p. 7), this too is far short of an error, oddity, or omission. While Plaintiff is not required to justify her chosen manner of shopping to Defendant, a distinct reason for Plaintiff's online shopping is clearly alleged in the Amended Complaint: "Due to [the Website]'s inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if [the Website] was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do." Amended Complaint at ¶ 34. Indeed, Plaintiff attests that she has come to heavily rely on online shopping,

which (i) allows for convenient home delivery of the products she purchases; and (ii) allows her to shop on my own schedule, 24/7. Toro Decl. ¶ 4.

Defendant also argues that "[t]he Amended Complaint's plausibility is further undercut by how similar it is to the amended pleadings [Plaintiff] has filed in the Carbon Copy Cases." Def. Mem. at 7. However, as demonstrated *supra*, the fact that Plaintiff has encountered ADA violations on numerous other websites and has used the same language to allege the existence of such violations and resulting harm in other federal lawsuits does not weaken the plausibility of Plaintiff's allegations. Even if every one of Plaintiff's lawsuits were 100% identical (which they are not), "[t]here is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." *Dominguez,* 2020 U.S. Dist. LEXIS 109679, at *11 (citations omitted).

Rather, the Amended Complaint sufficiently establishes Plaintiff's injury in fact. The Amended Complaint specifies at least two dates on which Plaintiff accessed Defendant's Website (*i.e.,* July 12, 2022 and December 16, 2022, *see* Amended Complaint at ¶¶6, 36), specifies the specific products Plaintiff sought to buy and seeks to buy in the future (*e.g., inter alia,* "Ambrosia" and/or "Esyllt" earrings, *see* Amended Complaint at ¶¶ 8, 16, 36, 37) and provides context for Plaintiff's desire to purchase such products (*e.g.*, Plaintiff is interested in these products as they are thinly-styled and made of real gold, as Plaintiff prefers," *see* Amended Complaint at ¶ 8).   The Amended Complaint alleges that "Plaintiff intends on visiting the Website immediately if it were made accessible to her in order to purchase either the "Ambrosia" or "Esyllt" earrings from [the Website]" (Amended Complaint at ¶ 37). The Amended Complaint explicitly alleges that "Plaintiff has actual knowledge of the fact that Defendant's [W]ebsite, Shop-generalstore.com, contains

access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons" (Amended Complaint at ¶ 39) and further alleges that Plaintiff inaccessibility of the Website "has deterred Plaintiff from making an online purchase of the 'Ambrosia' or 'Esyllt' earrings" (Amended Complaint at ¶ 16).

In *Tavarez v. Moo Organic Chocolates, LLC*, the court found as follows:

> The parties primarily dispute. . . whether [p]laintiff adequately alleged his intent to return to [d]efendant's website once it is rendered accessible. The [amended complaint at issue] adds detail to [p]laintiff's allegations in this regard. It specifies three dates on which [p]laintiff accessed [d]efendant's website, the specific product [p]laintiff allegedly seeks to buy, his habit of consuming chocolate, and characteristics of [d]efendant's Almond Mini Bars that he finds attractive. [Thus,] [t]he [amended complaint at issue] is more detailed than the complaints the Second Circuit dismissed for lack of standing in *Calcano*. . . . If the facts alleged in the [amended complaint at issue] are accurate, [p]laintiff has alleged sufficient facts to establish standing at this stage.

2022 U.S. Dist. LEXIS 210720, at *9 (S.D.N.Y. Nov. 21, 2022) (*citations omitted*); *see also Sanchez v. NutCo, Inc*., 2022 U.S. Dist. LEXIS 51247, at *6-7 (S.D.N.Y. Mar. 22, 2022) (finding that the plaintiff alleged facts that allow a reasonable inference that he intended to return to the subject website, where the complaint alleged that (i) the plaintiff unsuccessfully tried to navigate the subject website; (ii) the subject website's barriers deterred the plaintiff from visiting the website in the future; and (iii) the plaintiff intended to visit the site again in the future when the barriers are cured). As was the case in *Tavarez* and *Sanchez*, the facts pled in the Amended Complaint are sufficient to establish standing at this stage.

In addition, and importantly, while Plaintiff has expressed her intent to return to the Website once it becomes accessible, Plaintiff is unable to specify further details concerning the timing of her future intent, as Defendant's Website is currently not accessible to visually impaired consumers. Toro Decl. ¶ 14. Until the Website is made accessible, establishing any further details concerning

the timing or nature of Plaintiff's return to the Website, as well as any further attempts by Plaintiff

to visit the Website again, would be a futile endeavor (Toro Decl. ¶ 15), which negates Defendant's

argument. *See, e.g., Lowell v. Lyft, Inc*., 2022 U.S. Dist. LEXIS 230863, at *24-25 (S.D.N.Y. Dec.

22, 2022) (finding that the plaintiff had established that she has suffered an injury in fact, as the risk

of imminent future harm to the plaintiff was based on the continued lack of accessibility on the

defendant's app, that "any attempt to download and use the app remains a futile gesture," and that

the plaintiff expressed an intention to use the app once it became accessible).

Given these additional facts, standing is clear. *See, e.g., Monegro*, 2022 U.S. Dist. LEXIS

25576, at *10 (*citing Angeles v. Grace Prods*., 2021 U.S. Dist. LEXIS 182317 (S.D.N.Y. Sept. 23,

2021) (finding standing where the plaintiff had submitted an affidavit alleging additional facts,

including her ongoing interest in purchasing beauty products from the defendant's website).

### C. DEFENDANT'S SUBMISSION OF EXTRINSIC EVIDENCE SIDESTEPS PROPER PROCEDURE AND IS THEREFORE IMPROPER

Defendant's use of extrinsic evidence in the form of the declaration of its counsel (the

"Jantarasami Decl.") is likewise improper.

> A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based. A motion under Rule 12(b)(1) that is based solely on the allegations of the complaint is a facial challenge. Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits. In opposition to such a motion, a plaintiff must come forward with evidence of her own to controvert that presented by the defendant, or may instead rely on the allegations in the pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.

*Hecht v. Magnanni Inc.* 2022 U.S. Dist. LEXIS 60836, at *4-5 (S.D.N.Y. Mar. 31, 2022) (Vyskocil,

J.) (citations omitted) (emphasis added); *see also Monegro*, 2022 U.S. Dist. LEXIS 25576, at *5

("Where the jurisdictional challenge is fact-based, the defendant may proffer evidence beyond the

pleading, and the plaintiff will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b) motion reveal the existence of factual problems in the assertion of jurisdiction").

While Defendant submits the Jantarasami Decl. to support its motion, Defendant's 12(b)(1) challenge is *facial*, not *factual*. Defendant argues that "[t]he Amended Complaint does not include any factual context that would make it plausible to suppose that [Plaintiff] ever intends to return to [Defendant's Website] or has any bona fide intention of otherwise becoming a General Store customer" (Def. Mem. at 6) and that "[t]he Amended Complaint's plausibility is further undercut by how similar it is to the amended pleadings [Plaintiff] has filed in the Carbon Copy Cases" (Def. Mem. at 7).  Defendant does not set forth any argument to challenge the *factual* basis for standing; rather, Defendant argues that the allegations in the Amended Complaint fail to meet the requisite standard of plausibility. These challenges are therefore facial, as they are entirely based on the legal sufficiency of the pleadings and not on any additional factual basis. Accordingly, the Jantarasami Decl., which only supports Defendant's facial challenge, was submitted improperly. The Court should therefore disregard the extrinsic evidence submitted by Defendant and must treat all factual allegations as true and draw reasonable inferences in favor of Plaintiff. *See Monegro*, 2022 U.S. Dist. LEXIS 25576, at *4 ("Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party") (*citing Robinson v. Gov't of Malay*., 269 F.3d 133, 140 (2d Cir. 2001)).

It is also telling that, while Defendant has gone so far as to submit declaratory evidence, Defendant's declaratory evidence does not refute the existence of the alleged Access Barriers, nor

that it does business with consumers in the State of New York. Clearly Defendant was not able to make such a demonstration, or else Defendant would have no doubt done so. Indeed, as of as late as January 30, 2023, Plaintiff confirmed that the accessibility issues that are the subject of this action still persisted. Toro Decl. ¶ 12.

### D. BECAUSE DEFENDANT HAS FAILED TO DEMONSTRATE SUFFICIENT GROUNDS FOR DISMISSAL OF THE FEDERAL ADA CLAIM ASSERTED BY THE AMENDED COMPLAINT, THE REQUEST FOR DECLARATORY RELIEF, THE STATE LAW CLAIMS, AND NEW YORK CITY LAW CLAIMS MUST BE SUSTAINED

On the basis of its standing challenges, Defendant next asserts that the Court must likewise dismiss the request for declaratory relief, the New York State law claims and New York City law claims. Def. Mem. at pp. 7-8. However, as demonstrated *supra*, Defendant has not demonstrated sufficient grounds upon which to obtain dismissal of the ADA claim at issue in this action. Accordingly, Defendant's attempts at obtaining a dismissal of the request for declaratory relief, the New York State law claims and the New York City law claims should likewise be denied.

### VI.    CONCLUSION

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated:    Brooklyn, New York
          February 21, 2023

MARS KHAIMOV LAW, PLLC
*Attorneys for Plaintiff*

/s/ Mars Khaimov
By: Mars Khaimov, Esq.
108-26 64th Avenue, Second Floor
Forest Hills, New York 11375
Tel (929) 324-0717
Fax (929) 333-7774
Email: mars@khaimovlaw.com
